1

2

3

4

5

6                                  UNITED STATES DISTRICT COURT
                                   EASTERN DISTRICT OF WASHINGTON
7

8   UNITED STATES OF AMERICA,
                                                   NO. CR-04-2107-EFS
9                     Plaintiff,                   NO. CR-04-2108-EFS

10          v.                                     **ORDER GRANTING DEFENDANTS'
                                                   MOTIONS TO DISMISS AND DENYING
11  HARRY JAMES SMISKIN and KATO                   ALL OTHER MOTIONS AS MOOT**
    SMISKIN,
12
                      Defendants.
13

14
         On May 17, 2005, the Court heard oral argument on Defendants'
15
    Motions to Dismiss, (CR-04-2107: Ct. Rec. 21; CR-04-2108: Ct. Rec. 19),
16
    as well as numerous other pre-trial motions.  Mr. Russell Mazzola
17
    appeared on behalf of Defendant Harry Smiskin and Ms. Rebecca Pennell
18
    appeared on behalf of Defendant Kato Smiskin.  Ms. Jane Kirk represented
19
    the Government at the hearing.  After thoroughly reviewing all submitted
20
    material, relevant case law, and applicable statutes, the Court is fully
21
    informed and accordingly grants Defendants' Motion to Dismiss and denies
22
    all other motions as moot.
23
    \\
24
    \\
25
    \\
26

ORDER ~ 1

1        **CCTA and the Washington State Pre-Notification Requirement**

2     Defendants have been indicted on charges of violating the

3 Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 2342(a), (CR-

4 04-2107: Ct. Rec. 1; CR-04-2108: Ct. Rec. 1). Defendants' indictment was

5 issued after ATF agents seized 4,205 cartons of cigarettes from a U-Haul

6 trailer on Defendant Harry Smiskin's property in Wapato, Washington, (Ct.

7 Rec. 20, Ex. E).

8     Under the CCTA, it is "unlawful for any person knowingly to ship,

9 transport, receive, possess, sell, distribute, or purchase contraband

10 cigarettes." 18 U.S.C. § 2342(a). The term "contraband cigarettes" is

11 defined as (i) a quantity of cigarettes in excess of 60,000 (ii) that do

12 not bear evidence of the payment of applicable State cigarette taxes in

13 the State where such cigarettes are found and (iii) are possessed by a

14 person not authorized to possess such cigarettes. 18 U.S.C. § 2341(2).

15 An individual is allowed to possess what would otherwise be considered

16 contraband cigarettes under the CCTA if he is a person "licensed or

17 otherwise authorized by the State where the cigarettes are found to

18 account for and pay cigarette taxes imposed by such State" and "who has

19 complied with the accounting and payment requirements relating to such

20 license or authorization with respect to the cigarettes involved[.]" 18

21 U.S.C. § 2341(2)(C)(i)-(ii). Thus, generally speaking, only individuals

22 who possess large quantities, (> 60,000), of untaxed cigarettes and who

23 are not authorized to have such cigarettes may be convicted under the

24 CCTA.

25     Under Washington State law, for purposes of enforcing the State's

26 cigarette excise tax, cigarettes must have a tax stamp affixed to their

ORDER ~ 2

1  packaging prior to handling and transportation. *See* RCW 82.24.250.

2  However, individuals may transport cigarettes not bearing Washington

3  State tax stamps if they are either a licenced wholesaler or a "person

4  who has given notice to the [Liquor Control Board ("LCB")] in advance of

5  the commencement of [the unstamped cigarettes'] transportation." RCW

6  82.24.250(1).  Thus, aside from wholesalers, Washington State imposes a

7  pre-notification requirement on all individuals desiring to transport

8  cigarettes not bearing Washington State cigarette tax stamps.

9      RCW 82.24.250's pre-notification requirement consequently forms the

10  basis for determining whether an individual is authorized to possess and

11  transport unstamped cigarettes under the CCTA in Washington State.  If

12  a person has pre-notified the LCB of his intention to transport unstamped

13  cigarettes, he is authorized to transport those cigarettes within

14  Washington State's borders.  Because that possession is authorized, those

15  cigarettes do not constitute contraband under the CCTA and may not serve

16  as the basis of a CCTA criminal prosecution under 18 U.S.C. § 2342(a),

17  where the possession of contraband cigarettes is a necessary element of

18  the offense.

19      In order for Defendants to be found guilty of violating the CCTA,

20  the Government will have to prove the cigarettes seized from Defendant

21  Harry Smiskin's property (i) were in excess of 60,000, (ii) did not have

22  Washington State cigarette tax stamps affixed to their packaging, and

23  (iii) were unauthorized by Washington State because Defendants were not

24  wholesalers and did not pre-notify the LCB of their intentions to

25  transport the cigarettes as required by RCW 82.24.250.

26

ORDER ~ 3

1    As enrolled members of the Confederated Tribes and Bands of the
2 Yakama Nation (the "Yakama Tribe"), Defendants move the Court for a
3 finding that the cigarettes they allegedly possessed were not contraband
4 as contemplated under the CCTA and that the case should be dismissed.
5 Defendants assert that Article III of the Yakama Treaty of 1855 secured
6 the *right to travel* to Yakama Tribal members and that that right may not
7 be impinged upon by a pre-notification requirement.  Defendants then
8 claim that if they were not required to pre-notify the State before
9 allegedly transporting the seized unstamped cigarettes, those cigarettes
10 were not "contraband" and therefore cannot be the basis of a CCTA
11 prosecution.  Defendants' right to travel under the Yakama Treaty of
12 1855, and its interplay with the Washington State pre-notification
13 requirement and the CCTA are the subject of the following legal analysis.
14    The CCTA is a law of general applicability and is "presumed to apply
15 with equal force to Indians." *United States v. Baker*, 63 F.3d 1478, 1484
16 (9th Cir. 1995).   However, despite the CCTA's general presumption of
17 applicability, it can not apply to Defendants if its application would
18 abrogate rights guaranteed to them by the Yakama Treaty of 1855. *See*
19 *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir.
20 1985).  It is Defendants' position that their prosecution under the CCTA
21 abrogates their Treaty right to "travel and transport goods to market."
22 Thus, the Court must examine the Yakama Treaty of 1855 and determine the
23 validity of that assertion.
24 \\
25 \\
26 \\

ORDER ~ 4

1

2        **Yakama Treaty of 1855 and the Right to Travel**

3        Article 3 of the Yakama Treaty of 1855 (the "Treaty") states:

4        [I]f necessary for the public convenience, roads may be run
         through the said reservation; and on the other hand, the right
5        of way, with free access from the same to the nearest public
         highway, is secured to them; as also the right, in common with
6        citizens of the United States, to travel upon all public
         highways.

7   Treaty with the Yakamas, 12 Stat. 951 (1855).  The Ninth Circuit has held

8   that this clause secures a right to travel for Yakama Tribal members. *See*

9   *Cree v. Flores*, 157 F.3d 762 (9th Cir. 1998) (affirming the district

10  court's decision in *Yakama Indian Nation v. Flores*, 955 F.Supp. 1229

11  (E.D. Wash. 1997)).

12       In *Cree*, the Ninth Circuit was asked to determine whether Article

13  III of the Treaty prevented Washington State from imposing registration

14  and licensing fees on overweight trucks used by the Yakama Tribe to

15  transport lumber from reservation lands to off-reservation locations. 157

16  F.3d at 765.  In the course of interpreting the meaning of Article III's

17  public highways clause, the Ninth Circuit concurred with the factual

18  findings of the district court, specifically recognizing

19       travel was of great importance to the Yakamas, that they
         enjoyed free access to travel routs for trade and other
20       purposes at Treaty time, and that they understood the Treaty
         to grant them valuable rights that would permit them to
21       continue in their ways.

22  *Id.* at 769.  Subsequently, based on these and the district court's other

23  findings, the Ninth Circuit held that the *right to travel* does exist

24  under Article III of the Treaty and that it "guarantee[s] the Yakamas the

25  right to transport goods to markert over public highways without payment

26  of fees for that use." *Id.*  This Court is now asked to determine whether

    ORDER ~ 5

1  the Treaty's right to travel precludes Washington State from imposing a

2  pre-notification requirement on Yakama Tribal members for the

3  transportation of unstamped cigarettes.

4      In considering Defendants' motions, the Court relies on the factual

5  findings affirmed by the Ninth Circuit in *Cree*.  Those findings clearly

6  indicate that traveling and transporting goods for the purposes of trade

7  were vital to the Yakama Tribe's survival in 1855.  Moreover, the Court

8  recognizes that Article III did not vest the Yakama Tribe with a new

9  right to travel, but merely memorialized the parties mutual understanding

10 that the Yakama Tribe would continue to enjoy the travel rights they

11 already possessed. The issue in this case is whether the Yakamas'

12 customary right to travel recognized by the Ninth Circuit in *Cree,* as

13 guaranteed to them by the Treaty of 1855 can be properly extended to

14 include the right to transport goods without prenotification to

15 Washington state authorities. Examining the language of *Cree* and the

16 District Court's findings of fact approved therein, the Court concludes

17 the only reasonable deduction therefrom is that the Yakama Tribal

18 members, prior to the Treaty of 1855, did not need to notify anyone

19 including the United States or Washington Territorial authorities prior

20 to transporting goods to market and the Treaty did not change that. To

21 find otherwise, the Court would have to conclude that the Yakama Tribe

22 understood the Treaty to give government authorities the right to require

23 them to report any good, including traditional trade items such as salmon

24 or berries, prior to transporting them to other tribes or newly emerging

25 markets.  On the contrary, the Treaty's language and its history support

26 conclusions that Yakama Tribal members would be allowed to use public

ORDER ~ 6

1  highways to transport goods to market with as much freedom as they had

2  prior to the treaty with at lease two restrictions.

3      Washington State may require Yakama Tribal member to register their

4  vehicles for identification purposes when driving them off the

5  reservation. *Yakama Indian Nation,* 955 F.Supp. at 1260.  Additionally,

6  Yakama Tribal members must conform to State regulations enacted to

7  preserve the public roadways. *Id.*  In general, then, Washington State may

8  impose restrictions on the Yakamas' right to travel that are for the

9  safety of those traveling the public roads and highways.[1]  Thus, the

10  Court must now address whether Washington State's pre-notification

11  requirement is a similarly permitted restriction on the Yakama Tribe's

12  right to travel.

13      The pre-notification requirement at issue in this case is found in

14  the Revised Code of Washington tax section and no language in RCW

15  82.24.250 indicates the requirement was intended for any purpose other

16  than facilitating cigarette tax collection.  The Ninth Circuit has held

17  that Washington State's purpose in enacting the pre-notification

18  requirement was to assist the State in collecting taxes from the sales

19  of cigarettes to non-Indians by Indian smoke shops. United States v.

20  Baker, 63 F.3d 1478, 1486 (9th Cir. 1995).

21      Because Washington State's requirement does not impose a financial

22  burden on Yakama Tribal members for the transportation of unstamped

23

24      [1] For example, a pre-transportation notification requirement might

25  be required by the State for the transportation of hazardous materials,

26  a safety issue affecting those traveling the public road and highways.

ORDER ~ 7

cigarettes, it does not automatically fail under the Ninth Circuit's analysis in *Cree*.  However, because the requirement's purpose is solely related to Washington State's tax-collecting concerns rather than maintaining the public highways for safe travel, the Court rules that it may not abrogate Yakama Tribal members' right to travel under the Treaty.

The required connection between a regulation's purpose and the treaty right it infringes upon is supported by an earlier United States Supreme Court interpretation of the Yakama Treaty of 1855. *See Tulee v. Wash.*, 315 U.S. 681 (1942).  In *Tulee*, the Supreme Court discussed Washington State's authority to restrict Yakama Tribal members' right to fish, which is a similarly broad right secured under the Treaty. *Id.*  The Supreme Court concluded Washington State could not impose licensing fees on Yakama Tribal members' right to fish, but that it could

> impose on Indians equally with others such restrictions of a purely regulatory nature concerning the time and manner of fishing outside the reservation as are *necessary for the conservation* of fish. . . .

*Id.* at 684 (emphasis added).  The Court finds it important that the State was not granted boundless freedom to restrict the time and manner of fishing practices.  Instead, it was only given authority to regulate fishing practices for conservation-related reasons.  In *Cree v. Flores*, the Supreme Court's limitation is echoed by the Ninth Circuit's affirmation of Judge McDonald's conclusions in *Yakama Indian Nation*, in which it was declared Washington State may restrict Yakama Tribal members' right to travel for reasons related to the maintenance of the highways and the safety of the traveling public.  Accordingly, because RCW 82.24.250's pre-notification requirement relates to Washington

ORDER ~ 8

1  State's effort to collect taxes and not an important travel-related State

2  concern, it is an impermissible impingement upon the Yakamas' right to

3  travel, including the right to transport goods to market as contained in

4  the Yakama Treaty of 1855.

5      Thus, Washington State may not require Yakama Tribal members to pre-

6  notify the LCB prior to transporting unstamped cigarettes within

7  Washington State's borders.  Consequently, since the pre-notification

8  requirement does not apply to Yakama tribal members, their possession of

9  unstamped cigarettes cannot be characterized as being unauthorized under

10  18 U.S.C. § 2341(2)(C).    Accordingly, those cigarettes are not

11  contraband, and cannot be the basis of a CCTA criminal prosecution under

12  18 U.S.C. 2342.

13      The Government points to *Washington v. Confederated Tribes of the*

14  *Colville Indian Reservation*, 447 U.S. 134, 159 (1979), in support of its

15  belief that Washington State's pre-notification requirement may be

16  imposed on Defendants.  In *Colville*, the Supreme Court held that states

17  "may impose at least minimal burdens on Indian businesses to aid in

18  collecting and enforcing [valid taxes]." *Id.*  Although Washington State's

19  pre-notification requirement may indeed only be a minimal burden on the

20  Yakama Tribe, the Government's reliance on *Colville* is misplaced.

21  *Colville* considered whether general tribal sovereignty may be abrogated

22  by state tax-collecting regulations, not whether rights under the Yakama

23  Treaty of 1855 may be abrogated by tax-collecting regulations.  Thus,

24  because Defendants ask the Court to consider their Treaty rights, rather

25  than issues of sovereignty, the Court need not analyze their motions

26

ORDER ~ 9

1  under *Colville* or other sovereignty cases applying the "minimal burden"

2  test.

3    The Government also argues that if the Court finds the State's pre-

4  notification requirement contrary to the Treaty's terms, Yakama Tribal

5  members would impliedly be allowed to transport illegal narcotics on

6  Washington State's public highways.  In drawing this conclusion, the

7  Government goes to far.  An order by this Court declaring the Treaty

8  allows Yakama Tribal members to transport *legal* good to market without

9  having to notify state authorities does not mean Yakama Tribal members

10  may transport *illegal* goods.  While the State can not require Yakama

11  Tribal members to report the transportation of legal goods for tax-

12  collection reasons, it can restrict the Yakamas' right to travel for

13  reasons intended to keep the roadways safe and open for travel.[2]

14    Accordingly, **IT IS HEREBY ORDERED:**

15    1.  Defendant Harry James Smiskin's Motion to Dismiss, **(NO. CR-**

16  **04-2107-EFS, Ct. Rec. 21),** is **GRANTED.**

17    2.  Defendant Kato Smiskin's Motion to Dismiss, **(No. CR-04-2108-**

18  **EFS, Ct. Rec. 19),** is **GRANTED.**

19    3.  Defendant Harry James Smiskin's Motion to Suppress,  **(NO. CR-**

20  **04-2107-EFS, Ct. Rec. 23),** is **DENIED AS MOOT.**

21    4.  Defendant Kato Smiskin's Motion to Suppress, **(No. CR-04-2108-**

22  **EFS, Ct. Rec. 32),** is **DENIED AS MOOT.**

23    5.  Defendant Harry James Smiskin's Motion *in Limine*,  **(NO. CR-**

24  **04-2107-EFS, Ct. Rec. 17),** is **DENIED AS MOOT.**

25

26

[2] *See* n. 1, p. 7.

ORDER ~ 10

6.   Defendant Kato Smiskin's Motion *in Limine*, **(No. CR-04-2108-EFS, Ct. Rec. 29)**, is **DENIED AS MOOT.**

7.   Defendant Harry James Smiskin's Motion for Bill of Particulars,   **(NO. CR-04-2107-EFS, Ct. Rec. 19)**, is **DENIED AS MOOT.**

8.   Defendant Kato Smiskin's Motion for Bill of Particulars, **(No. CR-04-2108-EFS, Ct. Rec. 34)**, is **DENIED AS MOOT.**

9.   Defendant Kato Smiskin's Motion for Discovery, **(No. CR-04-2108-EFS, Ct. Rec. 21)**, is **DENIED AS MOOT.**

10. Defendant Kato Smiskin's Motion to Disclose Rule 404/409 Evidence, **(No. CR-04-2108-EFS, Ct. Rec. 23)**, is **DENIED AS MOOT.**

11. Defendant Harry James Smiskin's Motion to Compel Grand Jury Transcripts,   **(NO. CR-04-2107-EFS, Ct. Rec. 32)**, is **DENIED AS MOOT.**

12. Defendant Kato Smiskin's Motion to Compel Grand Jury Transcipts, **(No. CR-04-2108-EFS, Ct. Rec. 25)**, is **DENIED AS MOOT.**

13. Defendant Harry James Smiskin's Motion to Join Motion of Co-Defendant,   **(NO. CR-04-2107-EFS, Ct. Rec. 34)**, is **DENIED AS MOOT.**

14.   Defendant Kato Smiskin's Motion to Join Motion of Co-Defendant, **(No. CR-04-2108-EFS, Ct. Rec. 27)**, is **DENIED AS MOOT.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to all counsel and the Jury Administrator.

**DATED** this  31st  day of May, 2005.

```
                         S/ Edward F. Shea
                         EDWARD F. SHEA
               United States District Judge
```

Q:\Criminal\2004\2107,2108.PTC.wpd

ORDER ~ 11